# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID B. SNEAD, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 09-6139 |
| SEVERANCE PAY PLAN OF JOHNSON & JOHNSON AND AFFILIATED COMPANIES, et al., | |
| Defendants. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                **OCTOBER 1, 2010**

Plaintiff David B. Snead ("Snead") brought this action against Severance Pay Plan of Johnson & Johnson and Affiliated Companies, Johnson & Johnson, and Pension Committee of Johnson & Johnson (collectively "J&J") for severance benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). Presently before this Court is Snead's Motion for Summary Judgment and J&J's Cross-Motion for Summary Judgment. For the following reasons, we will grant Snead's Motion, deny J&J's Motion, and remand this matter.

**I.    BACKGROUND**

Snead was employed as an Associate Director of Biostatistics by Centocor Research & Development, Inc. ("Centocor"), a subsidiary of J&J, beginning in May 2007. (Compl. ¶ 9.) Snead was previously employed for fifteen years as a Principal Biostatistican and in other statistical positions by another J&J subsidiary. (AR at D0062.)[1] As part of a reorganization in

---

[1] Snead filed with his Motion the administrative record that was before the administrator of J&J's benefit plan on appeal. This will be explained, infra. We cite to this record as "AR."

late 2008 and early 2009, Snead's Associate Director of Biostatistics position was eliminated. (Compl. ¶¶ 10-11.) Elimination of his position at that time resulted in Snead possibly being eligible for benefits under Article 4.1(a)(i) of the Severance Pay Plan of J&J (the "Plan") (AR at D0049.) Snead was informed by management that he would be required to interview for open Clinical Team Statistical Leader ("CTSL") positions. (Id. at D0002.) Snead interviewed for several of these CTSL positions within fifty miles of the Chesterbrook, Pennsylvania facility at which he was employed, but was not selected. (Id.) On February 18, 2009, Snead was offered a new position that was being created in the reorganized structure, titled "Project Leader" or "Project Statistician." (Compl. ¶ 14.) According to J&J, Snead's salary would have remained the same. (AR at D0061.) Snead asserts that he met with Judy Cooper ("Cooper"), a supervisor, on February 19, 2009 to express his appreciation for the position, but to decline it because he believed it to be not comparable in terms of responsibilities to his current position. Snead apparently was told at that time that Human Resources informed Cooper that he would not qualify for a severance package.[2] (Id. at D0003.) On February 24, 2009, Snead met with J&J's

---

[2]An employee whose position was eliminated is not eligible for severance benefits if he refused a comparable position that would have continued his employment. Article 4.1(b)(iii) of the Plan states that an "Eligible Employee" is not eligible for benefits if his employment is terminated as a result of:

> The refusal of a position with a Johnson & Johnson Company, which, in the sole opinion of the Pension Committee, is comparable (in terms of base pay or salary and responsibilities) to the Eligible Employee's current position and for which the primary work location is no more than a 50-mile radius from the Eligible Employee's current primary work location, or the acceptance of employment with a Johnson & Johnson Company.

(Id. at D009.)

"Pharma R&D HR Manager," Jackie Marchitell ("Marchitell), and Marchitell informed him that the new Project Statistician position was comparable to his Associate Director position. (Id. at D003). Snead disagreed with her and explained his reasons, including his belief that his present position was essentially a people management position and not primarily technical as the new position seemed to be. On March 3, 2009, Snead met with Marchitell again who provided him with a list of duties for the proposed new job titled "2009 Responsibilities." (Id. at D0009.) Snead was later informed by Marchitell that the new proposed position was more than a 70% match to his Associate Director position, and that she would not be recommending severance benefits.[3] (Id. at D007.) Snead disagreed, and on March 7, 2009, he informed Marchitell by e-mail of his decision to take early retirement and again requested severance benefits under the Plan. (Id. at D0009.) Snead last worked on March 13, 2009, and began retirement on March 15, 2009.

By letter dated March 31, 2009 to the Benefit Claims Committee ("BCC"), the delegee of the Pension Committee of J&J, Snead appealed the denial of severance benefits. (Id. at D0001.) By written decision dated August 19, 2009, the BCC determined that the denial of Snead's request for severance benefits was appropriate under the terms of the Plan. (Id. at D0064.)

## II. STANDARD OF REVIEW

Deciding the parties' Motions for Summary Judgment requires this Court to consider two standards of review: the summary judgment standard pursuant to Federal Rule of Civil Procedure 56 and the arbitrary and capricious standard under ERISA. Byrd v. Reliance Std. Life Ins. Co., 2004 U.S. Dist. LEXIS 24682, at *6 (E.D. Pa. Dec. 7, 2004).

---

[3]Snead's total severance benefits totaled $95,692. (Id. at D0061.)

3

A.      **Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Celotex, 477 U.S. at 325 (1986)). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-23. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

**B.     ERISA Standard**

Both parties agree that where, as here, a plan governed under ERISA provides the administrator with discretionary authority to determine benefit eligibility, this Court must review the determination under an arbitrary and capricious standard.  See e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-12 (1989).

Under the arbitrary and capricious standard, we may not reverse the administrator's decision denying disability benefits unless that decision was "without reason, unsupported by substantial evidence[,] or erroneous as a matter of law."  Abnathya v. Hoffmann-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).  The scope of this review is narrow and this Court is not free to substitute its own judgment for that of the Plan's administrator in determining eligibility for benefits under the Plan.  Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997).  In short, the arbitrary and capricious standard of review provides an "uncommon privilege in the American legal system – a limited right to be wrong . . . without being reversed."  Maurice Rosenberg, Judicial Discretion of the Trial Court: Viewed from Above, 22 SYRACUSE L. REV. 635, 649 (1971).

**III.    DISCUSSION**

**A.    The BCC Ignored Procedural Requirements of the Plan**

Snead first argues that the BCC's decision was arbitrary and capricious because it blatantly ignored two procedural requirements of the Plan.  Specifically, Snead asserts that:

> The BCC, as delegee of the Plan administrator, the Pension Committee, failed to comply with Article 7.1(b) of the Plan, requiring that the BCC issue a written notification of any denial of an initial claim for benefits, particularly setting forth the specific reasons for denial, a description of any additional materials or

> information necessary for Snead to have perfected his claim, and
> an explanation of why the materials or information were necessary,
> and an explanation of the Plan's appeal procedure.

(Pl.'s Mot. Summ. J. at 20.) The Plan's claims and procedures establish a two-stage process whereby a claimant may initially request benefits and, if such request is denied, may then appeal the denial to the BCC. Article 7.1(b) of the Plan provides that for claims that are:

> denied in whole or part, the Committee's notice of denial shall be
> in writing and shall give: (i) the specific reasons for denial with
> specific reference to pertinent Plan provisions upon which the
> denial was based; (ii) a description of any additional materials or
> information for the Eligible Employee to perfect the Claim and an
> explanation of why the materials or information are necessary; and
> (iii) an explanation of the Plan's Appeal procedure.

(AR at D0057.) Snead asserts that in derogation of Article 7.1(b)'s express requirement that initial claim denials be provided in writing with specific bases for denial and advice regarding information necessary to perfect one's claim, Snead was provided with no such written denial or advice. Snead asserts that it is undisputed that Marchitell conveyed the initial denial to Snead and failed to provide him with what was required under the Plan. J&J acknowledges that Snead appealed to the BCC from the determination communicated to him by Marchitell that he was not entitled to severance benefits. J&J also acknowledges that Snead was not given the required written notice that the Plan and ERISA requires.[4] J&J asserts, however, that while both the Plan and ERISA require written notice of an initial benefit denial, an absence of written notice does not establish either that the BCC acted arbitrarily and capriciously in deciding Snead's benefit claim or that Snead was denied full and fair review. (Defs.' Resp. Mot. Summ. J. at 8.)

Snead further asserts that J&J failed to comply with the appellate procedures at Article

---

[4] See 29 C.F.R. § 2560.503-(g)(10).

6

7.1(e) of the Plan which required the BCC to issue a decision within sixty days of receipt of the appeal. Snead states that it is undisputed that the BCC received Snead's appeal no later than April 3, 2009, yet the BCC did not mail Snead its decision until August 19, 2009 – a total of 138 days (AR at D0061, D0045-46). Again, J&J does not dispute that the BCC failed to comply with its own procedural requirement, nor does it offer any explanation for such failure to comply. Rather, J&J again asserts that the BCC's failure to issue its decision within the Plan's regulatory time frame did not prejudice Snead and does not provide evidence that the BCC's decision was arbitrary and capricious. (Defs.' Resp. Mot. Summ. J. at 8-10.) We disagree.

In Carney v. International Brotherhood of Electral Workers Local Union 98 Pension Fund, the Third Circuit found that failure to follow time constraints upon benefit determinations by plan administrators and fiduciaries that are expressly mandated by ERISA's implementing regulations in 29 C.F.R. § 2560.503-1(f)(1) to be significant in finding that the decision to deny benefits was arbitrary and capricious. 66 Fed. Appx. 381, 385-86 (3d Cir. 2003), In Carney, like the instant case, the record contained no evidence that the plan administrators attempted to comply with plan provisions requiring that an application for benefits be decided within ninety days of the receipt of the application, or, if additional time is needed, within a maximum of 180 days if notice is given to the applicant within 90 days explaining the reason for the delay. 66 Fed. Appx. at 381.

Here, there is no question that J&J failed to comply twice with the procedural requirements of the Plan. As noted above, J&J first failed to give Snead written notice of its initial denial and reasons for the denial. The Third Circuit has warned administrators that they "must give reasons to applicants for denying their claims so that: (1) applicants may clarify their

7

application on appeal; and (2) federal courts may exercise an informed and meaningful review of the pension boards' decision." Skretvedt v. E.I. DuPont de Nemours and Co., 268 F.3d 167, 177 n.8 (3d Cir. 2001); Doyle v. Nationwide Ins. Cos. & Affiliates Employee Health Care Plan, 240 F. Supp. 2d 328, 343-44 (E.D. Pa. 2003). Second, the BCC failed to hear his appeal within sixty days, but rather rendered its decision in 138 days –more than twice the time allotted. What is particularly disturbing about J&J's disregard in following its own Plan's procedural requirements is the complete lack of evidence in the record that it at least attempted to follow them. There is no evidence in the record nor does J&J offer any reasons now why it took the BCC 138 days to render its decision. Rather, J&J simply asks this Court to ignore such disregard and asserts that Snead was not prejudiced by such a delay. We decline to do so. While we do not find that the procedural failures alone establish that Snead's benefit denial was arbitrary and capricious, we do find that they are significant factors in our determination that the overall handling and denial of Snead's benefits was arbitrary and capricious.

**B.     The BCC Failed to Conduct a Full and Fair Review**

Snead also claims that the "BCC utterly failed to comply with the Plan and with ERISA requirements that it afford a full and fair review of the decision denying the claim." (Pl.'s Mot. Summ. J. at 11.) We agree. The Plan's appeal provision at Article 7.1(e) required that the BCC give a "full" and "fair" review to any "Eligible Employee" appealing the denial of a claim for benefits. (AR at D0058.) Such is required by the ERISA statute itself, 29 U.S.C. § 1133(2), as well as by the Department of Labor's ERISA implementing regulations, 29 CFR §§ 2560.503-1(h)(1) and (h)(2). The regulations require that the Plan's claims procedures "provide for a review that takes into account all comments, documents, records, and other information

8

submitted by the claimant relating to the claim without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv).

Snead asserts that the administrative record demonstrates that the BCC's review was anything but full and fair. He states that he initially submitted a ten-page appeal letter to the BCC on March 31, 2009 which provided evidence and commentary that showed that as much as 60% of the newly proposed Project Statistician position would involve duties different from those he performed as Associate Director. (Pl.'s Mot. Summ. J. at 12.) Snead asserts that in response to his appeal letter, the BCC took minimal action that resulted in the generation of exactly three new pages of investigatory material. (AR at D0061-63.) These materials consisted of a one-page appeal summary (id. at D0061), and a one-page and a half-page e-mail solicited from Marchitell, dated May 20, 2009 and addressed to John Ashton, presumably a member of the BCC (id. at D0062-63). Snead contends that the administrative record reflects that the BCC made no effort to review Snead's contentions regarding the differences in the proposed new position and his old position. Snead further states that the BCC conducted no investigation beyond its request of the May 20, 2009 e-mail from Marchitell regarding the comparability of the two positions. He claims that the BCC did not request, nor did it obtain, a formal job description for the newly proposed position. "The [BCC] did not obtain any documentation of the salary band, formal compensation, or job ladder for the proposed newly created position, each of which were available for the Associate Director and CTSL positions." (Pl.'s Mot. Summ. J. at 15.) In addition, Snead argues that the BCC took no steps to confirm that the proposed new Project Statistician position actually existed or whether J&J, in fact, filled it after Snead declined it. (Id.)

Snead argues:

> There is simply no evidence in the administrative record as to how the BCC was able to accept the Marchitell conclusion, unsupported by anything other than her suspect "grids," that the positions were comparable. Beyond that, the administrative record reflects that the BCC neither developed, utilized, nor relied upon any standards in determining what was meant by "comparable" in assessing the comparability of the two positions' responsibilities.

(Id. at 16.)

In addressing Snead's argument that the BCC acted arbitrarily and capriciously by relying on information provided by the decision-maker (referring to Marchitell's May 20, 2009 e-mail addressing the respective responsibilities of the two positions), J&J argues that the BCC fully considered Snead's submission as well, and that it was wholly appropriate for the BCC to consider the description of the positions' responsibilities by the business persons responsible for defining those responsibilities. (Defs.' Resp. Mot. Summ. J. at 14.) J&J states further that the argument that the same person made the initial denial does not render the BCC's review unfair, but to the contrary, the regulations permit a plan administrator's review to provide deference to the initial decision-maker. See 29 C.F.R. §§ 2560.503-1(g)(2) and 3(ii).

J&J further asserts that a full and fair review did not require the BCC to accept or give special deference to Snead's interpretation of the positions' responsibilities, nor did it require the BCC to explain why it instead credited the comparison of the responsibilities provided by Centocor Human Resources and management. See, e.g., Black & Decker Disability Plan v. Nord, 538 U.S. 822, 823-24 (2003) (holding that plan administrator was not required to give special deference or explain why it credited "reliable evidence that conflicts with . . . [plaintiff's] treating physician's evaluation"). J&J also states that Snead's argument that the BCC failed to

10

conduct an independent investigation of his appeal beyond the materials submitted by him and the May 20, 2009 e-mail is without merit. J&J submits that the argument fails because "[t]he Administrator does not have an affirmative duty to gather information in making its determination." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 394, n.8 (3d Cir. 2000); See also Doyle, 240 F. Supp. 2d at 340; Friess v. Reliance Standard Life Ins. Co., 122 F. Supp. 2d 566, 573 (E.D. Pa. 2000). It must be noted, however, that the court in Doyle also stated that a lack of adequate support in the record may be a basis for determining that an administrator's decision is arbitrary and capricious. 240 F. Supp. 2d at 340.

Here, while it may be true that the BCC did not have an affirmative duty to investigate Snead's claim, we find that the BCC based its decision on an inadequate record and also failed to again follow its own Plan requirement to give specific reasons for its adverse decision. Article 7.1(e) of the Plan states in part that "[i]n the event of an adverse decision, the Committee's decision shall give specific reasons for the decision, written in a manner calculated to be understood by the Eligible Employee and shall include specific references to the pertinent Plan provisions upon which the decision is based." (AR at D0058.) The entire decision and analysis of Snead's appeal by the BCC states:

> Regarding your claim, the Plan states that an individual is not eligible for severance benefits if employment is terminated as a result of " . . . the refusal of a position with a Johnson & Johnson Company, which, in the sole opinion of the Pension Committee, is comparable (in terms of base pay or salary and responsibilities) to the employee's current position . . ."
>
> The Benefits Claims Committee (acting as delegate of the Pension Committee) reviewed the job descriptions you provided, along with a summary description of the jobs provided by Human Resources, and determined that the overall responsibilities of the respective positions are

11

> comparable.
>
> Since the responsibilities were considered comparable, and there was no reduction from your prior salary, the Benefit Claims Committee supports the original determination that no benefit is payable from the Plan related to your separation from the Company.
>
> The decision of the Benefits Claims Committee is final and binding. However, if you have additional information relevant to the appeal, you may submit it for reconsideration. Otherwise, this will serve as the final and binding resolution of the claim.
>
> You also requested documents in your appeal in the event the appeal was not granted. Those documents will be provided under separate cover.

(Id. at D0064-65.)

It is apparent from the above statement that the BCC hardly followed its own regulation to "give specific reasons" for its denial of the appeal. Specifically, the BCC failed to explain why it rejected Snead's various reasons why the positions were not comparable. Rather, the BCC relied entirely upon Marchitell's analysis of the positions without explanation. We, thus, find this as another reason for our determination that the BCC's consideration was arbitrary and capricious.

We also find that the decision was based on an inadequate record. As noted, the BCC's determination was based solely on the May 20, 2009 e-mail from Marchitell where she primarily restated the "2009 Responsibilities" grid that she provided Snead at their meeting on March 3, 2009, and added a column to the right labeled "2008 Responsibilities." We find several problems with the BCC relying solely on Marchitell's breakdown of the positions' responsibilities. The first is whether Marchitell ever had been given the actual authority to

12

analyze the positions and make such a decision. Second, even if Marchitell was given such authority, we are unaware of the basis on which she came to her conclusions about the responsibilities of the new position because there is nothing in the record which includes a formal company description of the new position specifying exactly what the job responsibilities would be. In addition, there is no evidence in the record of the actual "base pay or salary" of the newly proposed position, a critical factor required to be assessed by the BCC in determining the comparability of the positions under Article 4(b)(iii) of the Plan. It seems from the BCC's brief decision that it simply adopted Marchitell's description of the new position and her conclusions concerning the comparability of the new position and Snead's old one. We, however, do not know what for sure whether the BCC did, in fact, simply adopt Marchitell's conclusions because the BCC failed to give detailed reasons for its decision as it was obligated to do under its own Plan.[5] In addition, the BCC also assumed that the new position was the same pay grade. In fact, the record is devoid of any evidence regarding whether such proposed new position actually did come into existence, and whether it was indeed filled by someone after Snead turned it down. For all of these reasons, we find that the BCC's review was indeed arbitrary and capricious.

### C. Appropriate Remedy

After a court determines that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits. Addis v. The Limited Long-Term Disability Program, 425 F. Supp. 2d 610 (E.D. Pa. 2006)

---

[5] We note that J&J in its Motion for Summary Judgment provides a detailed argument why the two positions are comparable, but the BCC failed to do so in its decision.

(citing Cook v. Liberty Life Assur. Co. of Boston, 320 F.3d 11, 24 (1st Cir. 2003)); see also Farina v. Temple Univ. Health Sys. Long Term Disability Plan, No. 08-247, 2009 WL 1172705, at *15 (E.D. Pa. Apr. 28, 2009). Remand is unnecessary where the claimant would have received benefits had the plan acted appropriately. Cook, 320 F.3d at 24.

Here, it cannot be determined on this record that Snead would have received the severance benefits had the Plan acted appropriately. Accordingly, for the reasons discussed above, we grant Snead's Motion for Summary Judgment, deny J&J's Motion, and remand this matter back to the administrator of the Plan to conduct a full and fair review of the decision to deny Snead's benefits.

An appropriate Order follows.